578 So.2d 842 (1991)
Mark M. MANNING, and Silvia Manning, His Wife, Appellants,
v.
INTERFUTURE TRADING, INC., Balfour, Maclaine, Inc., Ellen C. Oxreider and Gary V. Valletta, Appellees.
No. 90-1221.
District Court of Appeal of Florida, Fourth District.
May 1, 1991.
Lawrence Schechterman of Lawrence Schechterman, P.A., Boca Raton, for appellants.
Mary Ellen Valletta of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for appellees-Interfuture Trading, Inc., Ellen C. Oxreider and Gary V. Valletta.
Lloyd R. Schwed of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for appellee-Balfour, Maclaine, Inc.
HERSEY, Chief Judge.
This is an appeal from a non-final order granting a motion to compel arbitration. The underlying dispute revolves around the execution of documents to open a brokerage account. As a result of a downturn in the market, not only was the original investment *843 wiped out but also there was a margin call for additional moneys.
Mark M. Manning and Silvia B. Manning seek to recoup their investment and avoid the margin call in a multi-count complaint alleging various statutory and common law causes of action. The gravamen of their complaint is that Ellen C. Oxreider, the account executive with whom they dealt, promised them a safe investment without the possibility of a margin call. There are allegations of fraud and misrepresentation.
In a separate count the Mannings seek rescission of an arbitration agreement, alleging fraud in the inducement. In affidavits filed in opposition to the motion to compel they make more specific allegations concerning execution of the various documents executed to open the account. More particularly, they complain of the manner in which they were induced to sign the arbitration agreement.
The issue is whether the Mannings are entitled to have the court rather than an arbitrator hear and determine the question of the validity of the arbitration agreement.
The availability of arbitration under the circumstances of this case is compelled by the provisions of the Federal Arbitration Act. 9 U.S.C. § 2. The Act provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable" in the absence of grounds for revocation of the agreement. The issue of whether such grounds exist is for the court rather than for the arbitrator to determine, under section 4 of the Act. It has generally been held that where fraud (or some other ground for avoidance) is alleged as to the entire agreement rather than specifically as to the agreement to arbitrate, the entire matter should be resolved by arbitration. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Shearson/Lehman Bros., Inc. v. Ordonez, 497 So.2d 703 (Fla. 4th DCA 1986). This interpretation comes from the following explanatory language in Prima Paint:
if the claim is fraud in the inducement of the arbitration clause itself  an issue that goes to the `making' of the agreement to arbitrate  the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.
388 U.S. at 403-04, 87 S.Ct. at 1806, 18 L.Ed.2d at 1277. In several subsequent cases the holding in Prima Paint has been construed as requiring that where the entire transaction is infected by the alleged fraud or other ground for avoidance, the matter should be submitted to arbitration. Put another way, a rule has been distilled from the Prima Paint rationale that only where the attack is specifically and exclusively directed toward the arbitration clause or a separate agreement to arbitrate may the court try the issue before submitting the balance of the controversy to arbitration. Bitkowski v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 833 F.2d 1011, opinion issued, 866 F.2d 821 (6th Cir.1987); Bhatia v. Johnston, 818 F.2d 418 (5th Cir.1987); Driscoll v. Smith Barney, Harris, Upham & Co., 815 F.2d 655 (11th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987); Schacht v. Beacon Ins. Co., 742 F.2d 386 (7th Cir.1984). Our court seemingly has applied the rule in this fashion. See Spitz v. Prudential-Bache Secs., Inc., 502 So.2d 479 (Fla. 4th DCA 1987). In that case we held:
The question for determination by the trial court is whether the retirees are attacking the making of the entire Joint Account Agreement, or merely the particular arbitration clause. If the court concludes that the attack is on the entire contract which contains an arbitration agreement, arbitration may proceed. If, on the other hand, the court determines that the attack centers on fraud in the inducement going only to the arbitration clause, the aggrieved party may demand a jury trial as to that issue.
This all-or-nothing view has been criticized in a thoughtfully articulated opinion by Judge Sweet in Rush v. Oppenheimer & Co., 681 F. Supp. 1045 (S.D.N.Y. 1988). Judge Sweet's position is summarized in the following excerpt from his opinion:

*844 It follows logically from Prima Paint and § 4 of the Act that a court may order arbitration only when the party opposed to arbitration has not claimed that the arbitration agreement itself was fraudulently procured. Only when the arbitration agreement itself is valid does the Act instruct a federal court to order arbitration. To permit an arbitration panel to resolve a challenge to the validity of an arbitration agreement, whether or not accompanied by challenges to the underlying contract, would require a federal court to relinquish its jurisdiction, and its obligation, under § 4 of the Act to determine that "the making of the agreement for arbitration ... is not in issue." Therefore, when as here allegations of fraud are directed at the contract as a whole and at the arbitration clause in particular, the federal court must resolve the preliminary issue of the validity of the arbitration agreement.
Id. at 1049 (footnote omitted). Regardless of whether Judge Sweet's interpretation is correct, in Spitz this court aligned itself with the majority view and we adhere to that position here in order to promote the policy favoring arbitration.
The complaint in the present case contains two counts for fraud in the inducement. The Mannings allege that the defendants fraudulently induced them to begin trading and to continue trading but not that they fraudulently induced the Mannings to open the account. In a separate count they seek rescission of the arbitration agreement, claiming that the arbitration agreement is separable from the stock purchase agreement and defendants fraudulently induced them to sign the arbitration agreement. They moved for jury trial on all issues so triable.
The allegations as to fraud, while skeletal in the complaint, are fleshed out in affidavits submitted by the Mannings in opposition to the motion to compel. They provide, inter alia:
4. In connection with the opening of the account the Defendant, Ellen Oxreider, informed us that it was necessary that we sign certain documents, and that we had to sign certain "other papers", the purpose or contents of which were not explained nor disclosed to us. We were only told that it was routine.
* * * * * *
7. There is no entitlement on this piece of paper (Exhibit "A") nor was the language or its terms explained to us. We had no way of identifying the document as being an agreement to arbitrate. Quite to the contrary, we had placed in front of us many documents that were represented as being routine and "had to be signed" and we, not being experienced in these matters, accepted the representations made by the Defendants, and signed, much to our chagrin, without knowledge as to what we were signing.
8. The documents presented to us at the time the account was established were placed in front of us in such rapid fashion so as not to afford us the opportunity to read them, or even if we did read them, to have an opportunity to understand that which we were signing. We were at that time further told by the Defendant, Ellen Oxreider, that there was extreme urgency that we act promptly in order to get in "under the wire" concerning a certain investment, which investment was not explained to us.
9. The Defendant, Ellen Oxreider, failed to inform us that the Agreement to Arbitrate was not necessary for our proposed investment to occur nor did she inform us as to the meaning or import of our agreeing to arbitrate. If we had known that we were agreeing not to be able to file any claim in a court of law, we would not have signed the Agreement to Arbitrate.
We point out, parenthetically, that the initial representation in paragraph numbered "7" above that the document was not entitled is contradicted by the document which the Mannings actually signed and which is clearly entitled "Arbitration Agreement." In addition, that document contains the following legend in large, bold type which appears no more than an inch above the *845 lines upon which the Mannings signed their names:
BY SIGNING THIS AGREEMENT YOU (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION... .
YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH BMI. SEE 17 C.F.R. 180 1-180.5.
The rule is well established that a party's mere failure to read a contract and thus to know and understand its terms and implications is not grounds for rescission or revocation. See, e.g., Coleman v. Prudential Bache Secs., Inc., 802 F.2d 1350, 1352 (11th Cir.1986). Proof that one party prevented the other party from reading a contract is a sufficient defense, but the mere failure to read is not. Allied Van Lines, Inc. v. Bratton, 351 So.2d 344 (Fla. 1977).
Based upon the record before us, we find that even if there are sufficient allegations that the Mannings were prevented from reading the documents by some or one of the defendants, that basis for rescission permeates the entire transaction rather than only the arbitration agreement. Application of the general rule cannot be avoided by the simple expedient of seeking rescission only of the arbitration clause or agreement and demanding other forms of relief with regard to the underlying transaction. Any other interpretation would eviscerate the public policy in favor of arbitration clauses in contracts.
We therefore affirm.
DOWNEY and DELL, JJ., concur.