**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/04/99
THOMAS K. KAHN
CLERK

No. 97-5931

D. C. Docket No. 97-62-CV-JAL


MAZZONI FARMS, INC., a Florida corporation,

                                              Plaintiff-Appellant,

versus

E.I. DUPONT DE NEMOURS AND COMPANY,
a Delaware corporation, d.b.a. Dupont,
CRAWFORD & COMPANY, a Georgia Corporation,

                                              Defendants-Appellees.

No. 97-5932

D.C. Docket No. 97-63-CIV-LENARD

JACK MARTIN GREENHOUSES, INC.,
f.k.a. M & M ORNAMENTALS, INC.,
and JACK MARTIN,

Plaintiffs-Appellants,

versus

E.I. DUPONT DE NEMOURS AND COMPANY,
d.b.a. Dupont,

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Florida

(February 4, 1999)

Before ANDERSON and DUBINA, Circuit Judges, and FAY, Senior Circuit
Judge.

DUBINA, Circuit Judge:

These consolidated cases present the question whether a release in a settlement agreement bars a claim that defendant fraudulently induced plaintiffs to settle. Initially, however, we must decide whether a choice-of-law provision in the same agreement applies to the fraudulent inducement claim. Because we find no definitive Florida precedent for the choice-of-law issue, we certify that question to the Supreme Court of Florida and postpone disposition of these cases until we receive an answer from that court. In the event the Supreme Court of Florida decides Florida law applies, we also certify the merits question.

## I. BACKGROUND

Plaintiffs Mazzoni Farms and Jack Martin are commercial nurseries whose plants were allegedly damaged by a Dupont product called Benlate. In the early 1990's, plaintiffs sued Dupont and a local distributor of Dupont products for property damage and fraudulent concealment of Benlate's alleged defects. The parties subsequently settled those suits, and the settlement agreements contained this release:

> In consideration of Defendant's payment of the amount set forth in the authorization previously signed by Plaintiff, Plaintiff hereby releases Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff ever had, now has, or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in the Action).

3

(<u>Mazzoni</u> R1-8, Ex. A ¶ 1; <u>Jack Martin</u> R2-33, Ex. A ¶ 1.) The settlement agreements also contained a choice-of-law provision:

> This Release shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the conflict of laws or choice of law provisions thereof.

(<u>Mazzoni</u> R1-8, Ex. A ¶ 15; <u>Jack Martin</u> R2-33, Ex. A ¶ 1.)

After settling with Dupont, plaintiffs discovered information that led them to believe that Dupont had destroyed evidence and presented perjured testimony in the original litigation. They filed these suits in Florida state court, alleging that Dupont fraudulently induced them to settle. Dupont removed these cases to the district court on the basis of diversity of citizenship and then moved for dismissal. Once in federal court, plaintiff Mazzoni Farms amended its complaint and added Crawford & Company, a Dupont agent, as a co-defendant.

The district court, relying on Florida law, dismissed plaintiffs' claims under Fed.R.Civ.P. 12(b)(6), stating that the releases barred plaintiffs' claims. The court found that Florida law requires a party bringing a fraudulent inducement claim to choose between equitable and legal remedies. It found further that by asking for damages instead of recission, which might have required them to tender back the settlement proceeds, plaintiffs elected to pursue a legal remedy. As a consequence, the court determined that they ratified the settlement agreements which released

4

Dupont from "all . . . claims, . . . whether known or unknown . . . ." (Mazzoni R1-8, Ex. A ¶ 1; Jack Martin R2-33, Ex. A ¶ 1.)

## II. DISCUSSION

We review de novo the district court's decision to apply Florida law to plaintiffs' claims. See Strochak v. Fed. Ins. Co., 109 F.3d 717, 719 (11th Cir. 1997). Since the district court sits in Florida, Florida's choice-of-law rules apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Dupont argues that Delaware law controls because plaintiffs have not specifically alleged that Dupont fraudulently procured the choice-of-law provisions themselves. Plaintiffs' response is that their general allegation of fraudulent inducement renders void the choice-of-law provisions. To support the proposition that a choice-of-law provision controls in a fraudulent inducement case, in the absence of a specific allegation that the defendant fraudulently procured the choice-of-law provision itself, Dupont points us to two authorities: (1) Section 201 of the Restatement (Second) of Conflict of Laws, and (2) a line of Florida cases that applies a similar rule to arbitration clauses.

Section 201 provides that "[t]he effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by application of the rules of §§ 187-188." Restatement (Second) of Conflict of Laws § 201 (1971).

5

Section 187, in turn (with two exceptions not applicable here), permits parties to choose the law that will govern their contractual rights and duties. See id. § 187. So, if Florida were to follow the Restatement, Delaware law would apply to these fraudulent inducement suits, even if plaintiffs specifically challenged the choice-of-law provision, since Section 201 is unqualified.

But no Florida court has yet followed Section 201. The line of cases to which Dupont points by way of a "cf." signal stands for the proposition that an arbitration clause in a contract will compel arbitration of even a fraudulent inducement claim, unless the fraudulent inducement claim is directed at the arbitration provision itself. See, e.g., Medident Constr., Inc. v. Chappell, 632 So.2d 194, 195 (Fla. 3d Dist. Ct. App. 1994); Manning v. Interfuture Trading, Inc., 578 So.2d 842, 843 (Fla. 4th Dist. Ct. App. 1991); Physicians Weight Loss Centers of America, Inc. v. Payne, 461 So.2d 977, 978 (Fla. 1st Dist. Ct. App. 1984).

We find these cases unpersuasive because they do not present cleanly a question of state law. Rather, they rely on the federal policy favoring liberal interpretation of agreements to arbitrate and specifically on the United States Supreme Court's interpretation of Section 3 of the Federal Arbitration Act (F.A.A.), 9 U.S.C. § 3, in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 404 (1967). Prima Paint involved an application for a stay pending arbitration made to a federal

6

court, but the Supreme Court has since stated (in dicta) that Section 3 also applies to state courts. See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 26 & n.34 (1983). In addition, the Florida cases themselves repeatedly cite Prima Paint. See, e.g., Manning, 578 So.2d at 843; cf. Trojan Horse, Inc. v. Lakeside Games, 526 So.2d 194, 195-96 (Fla. 3d Dist. Ct. App. 1988) (F.A.A. § 2 applies in Florida courts); Old Dominion Ins. Co. v. Dependable Reinsurance Co., 472 So.2d 1365, 1367 (Fla. 1st Dist. Ct. App. 1985) (F.A.A. applies in Florida courts).

Plaintiffs' argument on the choice-of-law question is the same as its argument on the merits: first, that since the district court dismissed these cases under Rule 12(b)(6) for failure to state a claim, we must assume that all their factual allegations are true, including the fraud; and second, that if Dupont fraudulently induced plaintiffs to settle, then the settlement agreements, which include the choice-of-law provision (and the release), are voidable at plaintiffs' option. The first proposition is true enough, but we question whether the authority on which plaintiffs rely for the second proposition speaks to this issue. They cite Florida East Coast Railway Co. v. Thompson, 111 So. 525, 528 (Fla. 1927), which says that "[a] contract procured through fraud . . . is voidable [at the option of the innocent party]." This statement is uncontroversial enough in general terms, but we are not persuaded that it means we cannot enforce the choice-of-law provision because plaintiffs have not specifically

7

alleged that Dupont fraudulently procured the choice-of-law provision itself, and the Restatement rule <u>would</u> give effect to the choice-of-law provision.

In the absence of controlling authority, we certify this question to the Supreme Court of Florida. Also, because the plaintiffs' argument on the choice-of-law question is the same as its argument on the merits, a decision in favor of plaintiffs on the choice-of-law question might affect the merits question. For that reason, in the event the Supreme Court of Florida decides that Florida law applies, we also certify the merits question to that court. We note further that no Delaware case precisely addresses the question whether the release bars plaintiffs' fraudulent inducement claims, so if the Supreme Court of Florida directs us to apply Delaware law, we may need to certify that question to the Supreme Court of Delaware.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO SECTION 25.031, FLORIDA STATUTES, AND RULE 9.150, FLORIDA RULES OF APPELLATE PROCEDURE.**

**TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:**

The United States Court of Appeals for the Eleventh Circuit concludes that these cases involve determinative questions of state law for which there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Florida. This court therefore certifies these questions to the Supreme Court of Florida for

instructions based on the facts of these cases.

Styles of the cases: (1) Mazzoni Farms, Inc., a Florida corporation, Plaintiff-Appellant, v. E.I. Dupont Nemours & Co., a Delaware corporation, d.b.a. Dupont Crawford & Co., a Georgia corporation, Defendants-Appellees, Case No. 97-5931; and (2) Jack Martin Greenhouses, Inc., f.k.a. M & M Ornamentals, Inc., and Jack Martin, Plaintiffs-Appellants, v. E.I. Dupont Nemours and Co., d.b.a. Dupont, Defendant-Appellee, Case No. 97-5932.

Movant: Dupont is the movant for purposes of the choice-of-law question; plaintiffs are the movants for purposes of the substantive question. See Fla. R. App. P. 9.150(d).

Statement of Facts: We incorporate our statement of facts from above.

Questions to be Certified to the Supreme Court of Florida:

(1)   DOES A CHOICE-OF-LAW PROVISION IN A SETTLEMENT AGREEMENT CONTROL THE DISPOSITION OF A CLAIM THAT THE AGREEMENT WAS FRAUDULENTLY PROCURED, EVEN IF THERE IS NO ALLEGATION THAT THE CHOICE-OF-LAW PROVISION ITSELF WAS FRAUDULENTLY PROCURED?

(2)   IF FLORIDA LAW APPLIES, DOES THE RELEASE IN THESE SETTLEMENT AGREEMENTS BAR PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIMS?

As usual, our sterile phrasing of the issues need not preclude the Florida

Supreme Court from inquiring into the specifics of these cases. See Dorse v. Armstrong World Ind., Inc., 798 F.2d 1372, 1377-78 (11th Cir. 1986).

The clerk is directed to send the entire records of these cases with this certificate.

QUESTIONS CERTIFIED.