660 So.2d 1105 (1995)
Jimmy HATCHER and Samuel T. Hatcher, Appellants,
v.
James A. DIXON, Jr., Appellee.
No. 93-2269.
District Court of Appeal of Florida, First District.
August 28, 1995.
Rehearing Denied October 16, 1995.
Jimmy Hatcher, pro se.
Will J. Richardson of Richardson Law Offices, P.A., Tallahassee, for appellant Samuel T. Hatcher.
Julius F. Parker, Jr., of Parker, Skelding, Labasky & Corry, Tallahassee, for appellee.
BENTON, Judge.
Jimmy and Samuel T. Hatcher appeal summary judgment in favor of James A. Dixon, Jr., Esq., on the Hatchers' claim that Mr. Dixon fraudulently obtained a summary judgment in a separate action that arose out of an automobile accident. We affirm. In the present case, the Hatchers allege that they accepted offers of judgment that Mr. Dixon made in the earlier case, on behalf of Henry Flyte, the driver, only because Mr. Dixon represented to them that they would still be able to proceed against the owner of the car, Enterprise Rent-A-Car (Enterprise); but that Mr. Dixon then obtained a summary judgment in favor of Enterprise (in the earlier, separate case) on grounds that the consent judgments against Mr. Flyte barred recovery from Enterprise.

Case No. 90-0643
On June 21, 1989, a car owned by Enterprise and driven by Mr. Flyte collided with a pickup truck owned by Samuel T. Hatcher and driven by his father, Jimmy Hatcher. The Hatchers brought suit against Mr. Flyte, who conceded negligence; Allstate Indemnity Company (Allstate), Mr. Flyte's insurance company, which did not contest liability on account of the accident; and Enterprise. Eventually, the Hatchers accepted Mr. Flyte's offers of judgment. They allege they did so only after assurances from Mr. Dixon that they could continue to pursue their claims against Enterprise. Consent final judgments were entered in December of 1991, awarding Jimmy Hatcher $25,001 and Samuel T. Hatcher $5,001, in conformity with the offers. These judgments resolved all negligence claims the Hatchers had made against Mr. Flyte.
*1106 The Hatchers (who were unrepresented, until appellate counsel appeared on Samuel T. Hatcher's behalf at oral argument) then sought to go forward against Enterprise, under the dangerous instrumentality doctrine. Further settlement negotiations between Messrs. Hatcher and Mr. Dixon, who also represented Enterprise, ensued. When negotiations broke down, Enterprise filed a motion for judgment on the pleadings and/or motion for summary judgment, on grounds the consent judgments against Mr. Flyte barred further proceedings against Enterprise.
In April of 1992, at a hearing on Enterprise's motion, the Hatchers argued that the consent judgments against Mr. Flyte did not protect Enterprise from liability. Concluding the Hatchers had not intended to release Enterprise by accepting Mr. Flyte's offers of judgment, the trial judge before whom the earlier case was pending ruled: "Gentlemen, you don't have a deal, in my opinion. I am ready to set aside the consent judgment[s]."
At the same time, the trial judge advised the Hatchers that their judgments against Mr. Flyte barred further proceedings against any party on the negligence claims involving Mr. Flyte. But the Hatchers did not accept this advice and objected to the trial court's proposal to set aside the judgments. They insisted they had a right to retain the settlement proceeds (for receipt of which they had executed satisfactions of judgment) without giving up the right to go forward against Enterprise. Because the Hatchers refused rescission, the trial court entered summary judgment against them and in favor of Enterprise on May 7, 1992. No appeal was taken from this judgment.[1]

Case No. 92-2173
Subsequently, the Hatchers initiated the present lawsuit. They filed against Allstate, Enterprise, and Mr. Dixon, alleging that summary judgment against them and in favor of Enterprise had been fraudulently obtained in the earlier case.[2] Prior to entry of *1107 the summary judgment in favor of Mr. Dixon now under review, the trial court dismissed Allstate and Enterprise as parties, and the Hatchers appealed. On appeal, the judgment dismissing Allstate and Enterprise was affirmed. Hatcher v. Allstate Indem. Co., et al., 640 So.2d 1110 (Fla. 1st DCA 1994).
The question now before us is whether the summary judgment entered in favor of Dixon should stand. Appellee supported his motion for summary judgment with an affidavit in which he averred:
By mid-January, 1992 I had decided that, in an effort to get this matter concluded once and for all, I would try to settle the Hatchers' claims against Enterprise on Count I for some additional sums of money from my own pocket, realizing that if push came to shove and I was involved in any litigation, either by Mr. Hatcher or by Enterprise or Allstate, the deductible feature of my professional liability policy would be gone and I would be out of pocket that much money anyhow. I arranged for the Hatchers to come to my office to discuss the disposition of this matter along these lines. During that discussion I pointed out to them that I was not a wealthy man and that I could conceivably be subjected to liability to Enterprise based upon my oversight in failing to include it in the Offer of Judgment. I therefore offered Samuel Hatcher $1,000.00 and Jimmy Hatcher $2,000.00 from my own personal funds in order to finally settle and resolve the matter. The Hatchers stated that they would think this over and get back in touch with me.
On January 27, 1992 Jimmy Hatcher faxed me a letter in which he rejected my settlement offer and proposed that Sam would settle Count I with Enterprise for $3,000.00 and he would settle Count I with Enterprise for $10,000.00. In the meantime, my research had persuaded me that my legal position was correct and that *1108 Enterprise could have no greater liability than Mr. Flyte particularly when the Court's Final Judgment specified that the amount of damages awarded covered all claims and all damages arising out of the subject accident. I therefore rejected Mr. Hatcher's demands and filed a Motion for Summary Judgement on behalf of Enterprise, which was granted. Copies are attached hereto as Exhibits E and F.
During the hearing on the Motion for Summary Judgment, Judge Reynolds offered to set aside and vacate the Consent Final Judgments and let the case proceed on condition, of course, that the Hatchers return the monies they had accepted when they accepted the Offers of Judgment. Mr. Jimmy Hatcher refused that offer on the record as is evidenced by the transcript of that hearing on April 29, 1991, a copy of which is being filed with the Court in support of my Motion for Summary Judgment.
That the Hatchers declined rescission is not in dispute. We do not accept the premise, however, that their decision to keep the settlement proceeds (instead of acquiescing to the trial court's suggestion to disgorge and to agree to vacating the consent judgments) barred recovery against Enterprise on the negligence claims involving Mr. Flyte. But, in any event, the final summary judgment entered in Case No. 90-0643, and never appealed, did conclusively exonerate Enterprise of liability to the Hatchers on any claim predicated on Mr. Flyte's negligence in the automobile accident. Under principles of res judicata, the question of Enterprise's liability cannot now be relitigated.

Litigation Privilege
It is this inability to proceed against (and so recover from) Enterprise that the Hatchers identify as the wrong they say they have suffered at Mr. Dixon's hands. While the inability to proceed flows, as a matter of law, from the summary judgment entered against the Hatchers and in favor of Enterprise in the earlier case (and never appealed), the gravamen of the Hatchers' complaint is that Mr. Dixon procured the summary judgment that now bars recovery "fraudulently." They fault him for reversing field and successfully arguing against the advice he gave to induce the settlement.
Viewed as a complaint about Mr. Dixon's conduct "in the course of a judicial proceeding," this contention runs head on into the rule that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606, 608 (Fla. 1994). Clearly Mr. Dixon's filing and arguing the motion for summary judgment on which he prevailed in Case No. 90-0643 "ha[d] some relation to" that judicial proceeding.
For purposes of decision, we nevertheless assume, without deciding, that a lawyer who deliberately misleads an unrepresented adverse party should answer in damages for injury he thereby causes; and that the "litigation privilege" does not extend to settlement negotiations. Even on this assumption, however, and despite the dispute as to precisely what was said to induce acceptance of the offers of judgment in the earlier case, we conclude that Dixon was entitled to summary judgment in the present case.

No Misleading Representations
The advice which allegedly induced the Hatchers to settle with Mr. Flyte was sound, Mr. Dixon's second thoughts notwithstanding. The consent judgments the Hatchers obtained against Mr. Flyte did not legally preclude their recovering damages from Enterprise. Where the amount of damages has actually been litigated,
once obtaining a judgment against the servant, a plaintiff is limited to the amount of his prior recovery in a second action which seeks to hold the master vicariously liable. See, e.g., Pinnix v. Griffin, 1942, 221 N.C. 348, 20 S.E.2d 366; All v. Delaware & H.R. Corporation, Sup.Ct. 1941, 176 Misc. 977, 29 N.Y.S.2d 439; Restatement of Judgments § 96(1)(b) (1942).
Hinton v. Iowa Nat'l Mut. Ins. Co., 317 So.2d 832, 835 (Fla. 2d DCA 1975), cert. *1109 denied, 328 So.2d 842 (Fla. 1976). The same rule applies as to a car owner, when a case that goes to trial produces a judgment against the driver of the car, because there is
no logical reason for having a different rule where the vicarious liability occurs as a result of the negligent operation of an automobile as contrasted with other types of negligent conduct, particularly since the dangerous instrumentality doctrine is grounded upon the theory of respondeat superior. May v. Palm Beach Chemical Company, Fla. 1955, 77 So.2d 468.
Id. at 838. But a "judgment by consent for ... the injured person does not extinguish his claim against the person not sued," Restatement (Second) of Judgments, § 51(4) (1982), or settled with. The recent opinion in JFK Medical Ctr., Inc. v. Price, 647 So.2d 833, 834 n. 1 (Fla. 1994) quotes comments to subsection four with approval:
The settlement of a claim against one of several obligors generally does not result in the discharge of others liable for the obligation. This rule applies when the obligation is reduced to judgment, see § 50, and even though the liability of one obligor is derivative from another under principles of vicarious responsibility. Moreover, a judgment by consent, though it terminates the claim to which it refers, is not an actual adjudication. See § 27, Comment e. The considerations that lead to denying issue preclusive effect to consent judgments, chiefly the encouragement of settlements, are applicable when an injured person has claims against more than one person for the same wrongful act. It is therefore appropriate to regard the claim against the primary obligor and the person vicariously responsible for his conduct as separate claims when one of them has been settled. Any payment received by the injured person in such a settlement, however, discharges pro tanto the obligation of the other obligor to pay the loss. See § 50(2).
See generally Suniland Associates, Ltd. v. Wilbenka, Inc., 656 So.2d 1356 (Fla. 3d DCA 1995). This does not, of course, affect the finality of the summary judgment entered in Case No. 90-0643 on May 7, 1992.
Affirmed.
JOANOS, J., concurs.
WOLF, J., concurs in result only.
NOTES
[1] The Hatchers' notice of appeal filed in circuit court Case No. 90-0643 (DCA Case No. 92-3710) did make reference to the May 7, 1992 Final Summary Judgment. But no notice of appeal was filed until October 24, 1992, and the Hatchers abandoned all issues except what they identified as "the only issue [then] on appeal before this Honorable Court," viz.:

Whether or not Plaintiffs' THIRD AMENDED COMPLAINT as pled herein states a cause of action against Defendant Henry W. Flyte?
Reply Brief in Case No. 92-3710 at 1.
[2] In their complaint in Leon County Circuit Court Case No. 92-2173, appellants alleged:

45. Plaintiffs Jimmy Hatcher and Samuel T. Hatcher refused to accept the offers of judgment as drafted and as set out in Composite Exhibit F. Considerable negotiation and discussion by telephone subsequently took place between Plaintiff Jimmy Hatcher and Defendant Dixon. A meeting was subsequently held in the office of Defendant Dixon wherein Dixon, Jimmy Hatcher and Samuel T. Hatcher were present. At the said meeting Defendant Dixon clearly stated the following facts:
(a) that although he (Defendant Dixon) was attorney of record for both Henry W. Flyte and Defendant Enterprise, the offer of judgment (Exhibit F) was made only on behalf of Henry W. Flyte;
(b) that the offer of judgment was only made as to Count One of the Second Amended Complaint in Case No. 90-0643;
(c) that Plaintiff Jimmy Hatcher and Samuel T. Hatcher could continue to prosecute Count One of their Second Amended Complaint in Case No. 90-0643 against Defendant Enterprise;
(d) that the amounts of $25,001.00 and $5,001.00 were only partial settlements that would not in any way affect Plaintiffs claims against Defendant Enterprise;
(e) that the amounts of $25,001.00 and $5,001.00 only settled in full Plaintiffs' claims as set out against Henry W. Flyte in Count One of their Second Amended Complaint in Case No. 90-0643;
(f) that the settlement of Count One of their Second Amended Complaint in Case No. 90-06343 in no way affected any other claims that Plaintiffs have against Henry W. Flyte;
(g) that Henry W. Flyte would deliver the damaged Mazda pick-up truck owned by Plaintiff Samuel T. Hatcher to his home at Bristol and that Henry W. Flyte would pay all costs of delivery and further would pay any damages incurred during the course of delivery;
(h) that Henry W. Flyte would pay Walker Body Shop for any and all storage charges made as to the storage of the Mazda pick-up truck owned by Plaintiff Samuel T. Hatcher; and,
(i) that he (Defendant Dixon) would draft and would incorporate into Consent Final Judgements all the matters orally agreed to as set out in sub-paragraphs a-h above.
Based upon the oral representations as set out above as made by Defendant Dixon, Plaintiffs Jimmy Hatcher and Samuel T. Hatcher on December 2, 1991 agreed to accept the $25,001.00 and $5,001.00 as partial payments and as partial settlements in this litigation. On December 11, 1991 the Court entered a Consent Final Judgment For Plaintiff Jimmy Hatcher in the amount of $25,001.00 and the Court entered a Consent Final Judgment for Plaintiff Samuel T. Hatcher in the amount of $5,001.00, the said judgments being in accordance with the oral agreements reached between Plaintiffs and Defendant Dixon. A true copy of the said two (2) consent final judgments are attached hereto and marked Composite Exhibit G. Defendant Allstate and Defendant Enterprise directed Defendant Dixon in all the conduct as described herein above in paragraphs 44 and 45.
46. On December 16, 1991, a second meeting occurred in the office of Defendant Dixon wherein Dixon, Jimmy Hatcher and Samuel T. Hatcher were present. At the meeting Defendant Dixon delivered checks drawn on the account of Defendant Allstate in the amounts of $25,001.00 and $5,001.00 to Plaintiffs. During the course of the said meeting, Defendant Dixon told Plaintiffs Jimmy Hatcher and Samuel T. Hatcher that Defendant Enterprise was very upset with him (Dixon) for settling with Plaintiffs for Henry W. Flyte and not at the same time settling with Plaintiffs for Defendant Enterprise as to Count One of Plaintiffs Second Amended Complaint. Defendant Dixon then told Plaintiffs that Defendant Enterprise had threatened to sue him (Dixon) for malpractice. Defendant Dixon then stated that he (Dixon) would pay Plaintiffs three thousand dollars ($3,000.00) "out of my own pocket" if Plaintiffs would also settle the said Count One with Defendant Enterprise. Plaintiffs declined the said offer of $3,000.00 and refused to settle the said Count One with Defendant Enterprise.
47. On January 27, 1992, Defendant Dixon as attorney for Defendant Enterprise served a Motion For Judgment On The Pleadings And/Or Motion For Summary Judgment in Case No. 90-0643 wherein Defendant Dixon argued to the Court that the $25,001.00 and the $5,001.00 paid to Plaintiffs as partial payments by Henry W. Flyte, "as a matter of law," also released Defendant Enterprise from any and all liability under the said Count One of Plaintiffs Second Amended Complaint. A true copy of Defendant Dixon's Motion For Judgment On the Pleadings And/Or Motion For Summary Judgment is attached hereto and marked Exhibit H.
48. On May 7, 1992, Defendant Dixon was successful in obtaining an Order Granting Defendant Enterprise's Motion For Summary Judgement As To Count I in Case No. 90-0643 wherein the Court held that the subject payments of $25,001.00 and $5,001.00 as paid to Plaintiffs as partial payments by Henry W. Flyte also released Defendant Enterprise from liability under the said Count One. A true copy of the said order is attached hereto and marked Exhibit I. Defendant Dixon obtained the said order by means of fraud as Defendant Dixon knew that Plaintiffs Jimmy Hatcher and Samuel T. Hatcher would never have settled the said Count One in full against Henry W. Flyte and Defendant Enterprise for a measly $30,002.00.