[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2003
THOMAS  K. KAHN
CLERK

Nos.  01-13345 and 01-15693

D. C. Docket Nos. 98-02256 CV-ASG
and No. 99-00336 CV-ASG

GREEN LEAF NURSERY,
GUS PENA,

Plaintiffs-Counter-
Defendants-Appellants,

versus

E.I. DUPONT DE NEMOURS AND COMPANY,
a Delaware Corporation,

Defendant-Counter-
Claimant-Appellee.

Appeals from the United States District Court
for the Southern District of Florida

**(August 15, 2003)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

DUBINA, Circuit Judge:

In the early 1990's, plant growers throughout the country filed hundreds of lawsuits against E.I. DuPont De Nemours and Company ("DuPont") alleging fraud and products liability relating to the DuPont fungicide Benlate. In 1992, Green Leaf Nursery, Inc., a Florida plant nursery, and its owner ("Plaintiffs") brought such a suit against DuPont in Florida state court (the "Underlying Litigation"). In May 1994, notwithstanding ongoing accusations of discovery fraud and litigation misconduct in Plaintiffs' own case and in other Benlate cases throughout the country, which Plaintiffs' counsel monitored, Plaintiffs settled their claims with DuPont, executed a general release, and dismissed their Florida state court action with prejudice in August, 1995.[1]

Plaintiffs contend that after settling their case, they discovered that DuPont had engaged in a massive scheme of perjury, falsification of evidence, and fraudulent concealment of evidence to induce themselves and other Benlate plaintiffs to settle their claims for less than the claims' fair value. Although Plaintiffs accepted and kept the settlement monies, affirming the settlement agreement, they filed the present action against DuPont alleging fraud and

---

[1] Many other commercial nurseries and growers also settled their Benlate litigation with DuPont, executing releases and dismissing their actions with prejudice.

2

violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"),
codified at 18 U.S.C. § 1961 *et seq.*[2] The district court dismissed Plaintiffs' claims
in two orders and entered judgment in favor of DuPont that Plaintiffs' appealed
separately. We consolidate these appeals and affirm the district court's judgment.

BACKGROUND

A. The *Bush Ranch* Case

By the mid-1990's, many growers had filed lawsuits against DuPont
contending that Benlate was defective and caused damage to their crops and
nurseries. Plaintiffs monitored many of these cases, including one of the first
cases to proceed to trial, *In re E.I. DuPont De Nemours & Co. - Benlate Litigation*,
918 F. Supp. 1524 (M.D. Ga. 1995), *rev'd*, 99 F.3d 363 (11th Cir. 1996), which is
known as the *Bush Ranch* case. In the *Bush Ranch* case, the district court
sanctioned DuPont in excess of $100 million, finding that DuPont had committed
fraud on the court. On appeal, we held that the sanctions imposed were punitive,

---

[2] Plaintiffs' first amended complaint contained the following thirteen claims for relief: (1) fraud, (2) intentional nondisclosure of material facts, (3) fraudulent inducement to settle, (4) fraud on the court under Federal Rule of Civil Procedure 60(b), (5) rescission and damages for fraud, (6) racketeering in violation of 18 U.S.C. § 1962(c), (7) violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c), (8) conspiracy, (9) abuse of process, (10) infliction of emotional distress, (11) interference with prospective economic advantage, (12) spoliation of evidence, and (13) violation of the Florida Deceptive and Unfair Trade Practices Act. Plaintiffs' case was consolidated in the district court with multiple similar cases in which plaintiffs accuse DuPont of fraud in previous Benlate settlements.

and thus criminal in nature, so that the district court's imposition of sanctions in a civil proceeding without the constitutional protections accorded criminal defendants was improper. 99 F.3d at 369. Accordingly, we reversed the district court's sanction order and remanded the case for further proceedings. *Id*. at 373.

B. Other Settlement-Fraud Cases

The Plaintiffs were not alone in filing settlement-fraud cases. The first Benlate settlement-fraud cases to be litigated through judgment and appeal were damages actions brought in the Northern District of Georgia by several of the plaintiffs in the *Bush Ranch* case. *See Kobatake v. E.I. DuPont De Nemours & Co.*, 162 F.3d 619 (11th Cir. 1998) (per curiam). This court affirmed the district court's dismissal of the settlement-fraud claims based on the general release and the plaintiffs' inability to prove reasonable reliance due to the merger clauses in the plaintiffs' affirmed settlement agreements. *Id.* at 622.

Similarly, a district court in the Southern District of Florida dismissed several settlement-fraud cases based on the release clauses contained in the settlement agreements, including settlement agreements containing Delaware choice-of-law clauses identical to those found in Plaintiffs' settlement agreements. The Florida cases involved two groups of settlement-fraud plaintiffs: (1) those who had settled in 1994 and executed settlement agreements containing Delaware

4

choice-of-law clauses; and (2) those who had settled in late 1991 and early 1992 without having filed any litigation against DuPont and who had signed settlement agreements that did not contain choice-of-law clauses.

Appeals of these Florida district court decisions resulted in the certification of questions of Florida law to the Supreme Court of Florida. *See Foliage Forest, Inc. v. E.I. DuPont De Nemours & Co.*, 172 F.3d 1284 (11th Cir. 1999); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 166 F.3d 1162 (11th Cir. 1999). We certified the following two questions to the Supreme Court of Florida: (1) what is the effect of the choice-of-law clause, and (2) what is the construction of the release clauses in any settlement agreements governed by Florida, rather than Delaware, law. The Florida Supreme Court ruled that where a settlement-fraud plaintiff affirms a release, the choice-of-law clause is valid and governs the construction of the release, but in those cases where no choice-of-law clause exists, the release language is not sufficiently broad to bar fraudulent inducement claims. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313, 316 (Fla. 2000). Accordingly, we reversed the district court's orders dismissing the actions as barred by the release and remanded the cases.[3]

---

[3] We expressly stated that, upon remand, the district court should consider DuPont's arguments with regard to justifiable reliance. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 223 F.3d 1275, 1276 n.2 (11th Cir. 2000).

5

C. The Instant Action

Plaintiffs settled their Underlying Litigation in May 1994, executing a general release. In August 1995, the Florida trial court dismissed with prejudice the Plaintiffs' Florida state court action. The settlement agreement provided that

> [i]n consideration of [DuPont's] payment of the amount set forth in the authorization previously signed by Plaintiff[s], Plaintiff[s] hereby release[] [DuPont] from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff[s] ever had, now [have], or may hereafter have against [DuPont], by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in the Action).

[R. Vol. 3 Tab 208 Ex. C]. The settlement agreement also contains a choice-of-law clause that states: "This Release shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the choice of law provisions thereof." [R. Vol. 3 Tab 208 Ex. C].

Plaintiffs allege that the discovery abuses and litigation misconduct in the *Bush Ranch* case and other cases that they monitored along with the discovery abuses in their own case represent a scheme to induce them to settle their case for less than the fair value of their claims. Specifically, the Plaintiffs allege that DuPont fraudulently concealed information allegedly showing defects in Benlate

6

in the Underlying Litigation.[4]  Plaintiffs also allege that DuPont issued fraudulent discovery responses, put forth perjured testimony, and engaged in other allegedly dishonest litigation conduct.  Plaintiffs claim that in reliance on DuPont's actions in the Underlying Litigation and in the other Benlate cases, which they monitored, they suffered damages.  Therefore, Plaintiffs filed this settlement-fraud action more than three years after settling the Underlying Litigation and the *Bush Ranch* case.

During the pendency of the Florida certification proceedings from the other settlement-fraud cases, DuPont moved for judgment on the pleadings in the instant action.  DuPont also moved, in a related case involving similarly situated plaintiffs, for certification to the Supreme Court of Delaware of the issue of whether the release barred such settlement-fraud actions.  The district court granted DuPont's motion for certification in the related case and stayed all proceedings in this and all other related cases pending the resolution of the certified question. The district court certified the following question to the Supreme Court of Delaware: "Under Delaware law, does the release in these settlement agreements bar Plaintiffs' fraudulent inducement claims?" *E.I. DuPont*

---

[4]  This allegation is similar to Plaintiffs' allegation in the Underlying Litigation that DuPont fraudulently concealed information showing defects in Benlate.

*De Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 459 (Del. 1999).

The Delaware Supreme Court answered that, under Delaware law, the release

clause did not unambiguously bar the plaintiffs' fraudulent inducement claims. *Id.*

at 461. The court held that

> a tort claimant fraudulently induced to execute a release may opt
> either for rescission or a separate suit for fraud with damages
> calculated on the difference between that received under the release
> and the value of the settlement or recovery achieved had there been
> no fraud by the released party.

*Id.* at 458.

The district court then ruled on DuPont's motion for judgment on the

pleadings. DuPont had moved for judgment on the pleadings on all of Plaintiffs'

claims except for their spoliation claim. In an order dated March 8, 2001, the

district court found that Florida law governed Plaintiffs' tort claims and dismissed

all of Plaintiffs' state law claims as barred by Florida's litigation privilege.

*Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 135 F. Supp. 2d

1271, 1278, 1283 (S.D. Fla. 2001). As an alternative basis for dismissing

Plaintiffs' state law fraud claims,[5] the district court found that Plaintiffs' had not

---

[5] Plaintiffs' state law fraud claims included Count One - fraud, Count Two - intentional nondisclosure of material facts, Count Three - fraudulent inducement to settle, and Count Five - rescission and damages for fraud. Count Five's rescission claim sought to recover damages for fraud. Thus, the district court specifically dismissed that claim as well. *See Reynolds v. The Surf Club*, 473 So. 2d 1327, 1337 (Fla. Dist. Ct. App. 1985) (rejecting a claim for rescission for fraud where no "reasonable reliance" occurred).

reasonably relied on any misrepresentations by DuPont. *Id.* at 1297. The district

court denied DuPont's motion for judgment on the pleadings as to Plaintiffs'

federal RICO claims. *Id.* at 1289. The district court certified its order for

interlocutory review, *id.* at 1297-98, and we granted Plaintiffs' petition for

interlocutory review on June 21, 2001.

In the meantime, on May 9, 2001, DuPont filed motions for judgment on the

pleadings as to those claims not disposed of by the district court's March 8, 2001,

order – Plaintiffs' federal RICO and spoliation claims. Plaintiffs filed a motion for

leave to amend their first amended complaint on August 1, 2001, two days before

the scheduled oral argument on DuPont's motions for judgment on the pleadings

as to the federal RICO and spoliation claims. The proposed amendment sought to

revise the factual allegations of the complaint, eliminate certain claims upon which

the district court had already ruled,[6] and add two Florida RICO claims.

On August 24, 2001, the district court granted DuPont's motions,

dismissing Plaintiffs' remaining claims. The district court found that the Plaintiffs

failed to "adequately allege justifiable reliance on acts of mail and/or wire fraud,"

and did not "adequately state[] sufficient proximate cause between the alleged acts

---

[6] Plaintiffs wished to delete their claims for infliction of emotional distress, interference with prospective economic advantage, and violation of the Florida Deceptive and Unfair Trade Practices Act.

9

of obstruction of justice and witness tampering" in the *Bush Ranch* case and the Plaintiffs' injuries. *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1356 (S.D. Fla. 2001). As a result, the district court found that Plaintiffs' federal RICO claims failed for lack of any valid predicate acts.[7] *Id.* The district court found that Plaintiffs' spoliation claim failed because Plaintiffs neither alleged facts sufficient to show a significant impairment in the ability to prove their underlying case, nor alleged facts sufficient to demonstrate the required causal link between the destruction of evidence and their alleged damages. *Id.* at 1361.

In the August 24, 2001 order, the district court also denied Plaintiffs' motion for leave to amend their complaint, finding that it lacked jurisdiction to allow the amendment because of the pending interlocutory appeal in this court. *Id.* at 1362-63. The district court entered final judgment on September 4, 2001. Plaintiffs then perfected these appeals.

ISSUES

1. Whether the district court properly found that Florida law applied to the elements of Plaintiffs' tort claims.

---

[7] As an alternative basis for dismissing Plaintiffs' RICO claims, the district court found that section 107 of the Private Securities Litigation Reform Act of 1995, 18 U.S.C. § 1964(c), barred Plaintiffs' RICO claims. *Florida Evergreen Foliage*, 165 F. Supp. 2d at 1356-59.

10

2.  Whether the district court properly found that Florida law, which provides an immunity in civil damages suits for the conduct of parties, witnesses, and lawyers in prior litigation, bars Plaintiffs' current tort claims.

3. Whether the district court properly found that Plaintiffs could not have reasonably relied upon DuPont's alleged misrepresentations because of the accusations of fraud, misconduct, and dishonesty permeating the Underlying Litigation.

4.  Whether the district court properly granted judgment on the pleadings in favor of DuPont on Plaintiffs' federal RICO claims.

5.  Whether the district court properly granted judgment on the pleadings in favor of DuPont on Plaintiffs' spoliation claims.

6.  Whether the district court abused its discretion in denying Plaintiffs' motion for leave to amend their complaint.

## STANDARDS OF REVIEW

"We review a judgment on the pleadings *de novo*." *Jones v. Nordic Track, Inc.*, 236 F.3d 658, 660 (11th Cir. 2000). We review a district court's denial of a motion to amend a complaint for an abuse of discretion. *Compagnoni v. U.S.*, 173 F.3d 1369, 1371 n.7 (11th Cir. 1999).

## DISCUSSION

11

*A. Choice-of-Law*

The district court applied two rules in dismissing Plaintiffs' fraud and other tort claims: (1) the rule that parties have absolute immunity against damages claims based on litigation conduct, as announced in *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co.*, 639 So. 2d 606, 608 (Fla. 1994), and (2) the rule that a settlement fraud claimant cannot prove reasonable reliance on a party's misrepresentations if he settles a dispute involving accusations that the other party was guilty of fraud or other dishonest conduct, as articulated in *Mergens v. Dreyfoos*, 166 F.3d 1114, 1118 (11th Cir. 1999). Plaintiffs argue extensively that the district court erred in its application of these two rules because the law of Delaware, rather than Florida, governs Plaintiffs' state law claims. Plaintiffs contend that the choice-of-law clause in the settlement agreement, *Mazzoni Farms*, and *Florida Evergreen Foliage* all dictate that Delaware law applies to their tort claims.

The choice-of-law clause provides that "[t]his release shall be governed and construed in accordance with the laws of the State of Delaware . . . ." [R. Vol. 3 Tab 208 Ex. C]. The effect of this clause is narrow in that only the release itself is to be construed in accordance with the laws of the State of Delaware. The clause does not refer to related tort claims or to any and all claims or disputes arising out

12

of settlement or arising out of the relationship of the parties. This type of narrow choice-of-law clause calls for the application of the selected law to determine only the scope and effect of the release. Here, Plaintiffs seek monetary damages rather than a form of relief that would actually affect the release, such as avoidance. *See Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409-10 (11th Cir. 1998) (explaining that a provision stating that a contract was "governed by" Illinois law did not incorporate Illinois tort law); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (concluding that a choice-of-law clause providing that the contract "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts" did not encompass fraud claims for damages); *Sunbelt Veterinary Supply, Inc. v. International Bus. Sys. U.S., Inc.*, 985 F. Supp. 1352, 1354 (M.D. Ala. 1997) (explaining that a clause stating that a contract would be "governed by and construed under" California law was not broad enough to prevent application of the forum state's tort law); *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992) (explaining that "claims arising in tort are not ordinarily controlled by a contractual choice of law provision . . . . Rather, they are decided according to the law of the forum state") (internal quotation omitted). Thus, the Delaware Supreme Court applied Delaware law only in determining the effect of the release, and held that the release did not bar

13

Plaintiffs' fraudulent inducement claims. *Florida Evergreen Foliage*, 744 A.2d at 461.

Plaintiffs argue that *Mazzoni Farms* had already established that Delaware law governs the substantive elements of their claims. In *Mazzoni Farms*, this court certified to the Florida Supreme Court the question of whether the choice-of-law provision controls the release provisions of the settlement agreement. 166 F.3d at 1165. The court answered that the choice-of-law provision does control the release provisions of the settlement agreement and that Delaware law should be applied to determine whether the release barred Plaintiffs' fraudulent inducement claim. *Mazzoni Farms*, 761 So. 2d at 316. The Supreme Court of Delaware, in turn, held that the release in question does not bar fraudulent inducement claims. *Florida Evergreen Foliage*, 744 A.2d at 461.

Neither *Mazzoni Farms* nor *Florida Evergreen Foliage*, however, dealt with the question of what state's substantive law should be applied to the Plaintiffs' tort claims. The Florida Supreme Court in *Mazzoni Farms* did not address what state's laws would govern the elements of any tort claims not barred by the release, and the Delaware Supreme Court in *Florida Evergreen Foliage* did not address the scope of the choice-of-law clause, the law applicable to the fraudulent inducement claims not barred by the release, or any other conflicts issues. Rather, *Mazzoni*

*Farms* and *Florida Evergreen Foliage* dealt with whether the tort claims were still viable in light of the release. Therefore, neither *Mazzoni Farms* or *Florida Evergreen Foliage* determined that Delaware law governs the substantive elements of Plaintiffs' claims, as they contend.

Because the choice-of-law provision is narrow and governs only the scope and effect of the release, we turn to the choice-of-law rules of the forum state, Florida, to determine the applicable law governing the Plaintiffs' tort claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941).

Florida utilizes the "most significant relationship" test to determine which state's laws applies to tort claims. *Garcia v. Public Health Trust of Dade County*, 841 F.2d 1062, 1064-65 (11th Cir. 1988) (explaining that Florida follows the approach set forth in the Restatement, which states that "[t]he rights and liability of the parties with respect to an issue in *tort* are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties" and that contacts to be taken into account include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any,

15

between the parties is centered") (quoting Restatement (Second) Conflict of Laws § 145 (1971)).  All of the Plaintiffs are residents of Florida.  The Underlying Litigation, which Plaintiffs allege that they were fraudulently induced to settle, was brought in a Florida state court by Florida counsel and Plaintiffs settled their Underlying Litigation in Florida.  Therefore, Florida, the forum state, has the most significant contacts and relationship to Plaintiffs' tort claims.  Accordingly, we conclude that the district court properly found that Florida law governs Plaintiffs' tort claims.

### B.  Immunity For Litigation Conduct

In *Levin*, the Florida Supreme Court concluded that the litigation privilege precluded all tort claims based on a party's conduct during the course of litigation, holding that "any act occurring during the course of a judicial proceeding" is entitled to absolute immunity "so long as the act has some relation to the proceeding." *Levin*, 639 So. 2d at 608.[8]  However, this rule does not leave parties

---

[8]  This court had certified the following question to the Florida Supreme Court:
Whether certifying to a trial court an intent to call opposing counsel as a witness at trial in order to obtain counsel's disqualification, and later failing to subpoena and call counsel as a witness at trial, is an action that is absolutely immune from a claim of tortious interference with a business relationship by virtue of Florida's litigation privilege.
639 So. 2d at 607.
The Florida Supreme Court answered affirmatively in *Levin*, concluding that the public's right to a free and full disclosure of the facts in the conduct of judicial proceedings favored extending the privilege traditionally afforded to any defamatory statements made in the course of judicial

16

without a remedy for misconduct occurring during or relating to litigation. For example, "a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice." *Id*. at 608-09. The Florida Supreme Court recognized the trial court's inherent power as a reason for favoring an absolute immunity for litigation conduct. *Id.* For example, in this case, Plaintiffs could have filed a contempt motion before the trial court in the Underlying Litigation as a remedy for DuPont's misconduct. Plaintiffs chose instead to pursue fraud actions in subsequent litigation, which is precisely the strategy that the Florida Supreme Court intended to preclude by announcing the *Levin* rule. *Id.* at 608.

Plaintiffs allege that in the Underlying Litigation and in other Benlate cases, DuPont, among other things, failed to respond to or issued improper responses to

---

proceedings to any act related to a judicial proceeding. 639 So. 2d at 607-08. The *Levin* court explained:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Id.* at 608.

discovery, gave untruthful testimony, submitted improper or obstructive motions, committed misconduct during the trial of a case, disobeyed court orders, and took false litigation positions. These acts related to the Underlying Litigation. Thus, under *Levin*, we conclude that the district court properly found that DuPont was entitled to immunity for these actions in this subsequent civil fraud action.

Because the Plaintiffs' claims in this case depend on acts with "some relation" to the Underlying Litigation, Florida law is clear and provides an absolute immunity for the conduct upon which Plaintiffs' claims are based. *See Rushing v. Bosse*, 652 So. 2d 869, 876 (Fla. Dist. Ct. App. 1995) (concluding that absolute immunity would be awarded for conduct involving a violation of Florida Rule of Judicial Administration 2.060(d) because such conduct is related to the judicial proceedings); *Donner v. Appalachian Ins. Co.*, 580 So. 2d 797, 798 (Fla. Dist. Ct. App. 1991) (finding that alleged fraudulent misrepresentations made during discovery in a previous action were entitled to absolute immunity).

Plaintiffs assert that the holding of *Levin* is that "Florida courts should not look behind lawful, tactical decisions of a trial lawyer or a litigant to establish tortious injury." [Appellants' Opening Brief p. 30]. However, *Levin* itself involved a claim of intentional abuse of litigation procedures. Plaintiffs contend that DuPont's misconduct is distinguishable from that type of conduct afforded

18

immunity because DuPont's decisions to offer perjured testimony, conceal evidence, and falsify discovery were not lawful. However, the Florida Supreme Court held that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding." *Levin*, 639 So. 2d at 608. The inclusion of the phrase "such as the alleged misconduct at issue" does not negate or limit the holding of *Levin*, which affords immunity to "any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Id.*

Plaintiffs also argue that the ruling in *Mazzoni* demonstrates that Florida's litigation privilege does not protect litigation misconduct against claims for fraudulent inducement. In *Mazzoni*, the Florida Supreme Court considered the release and whether it barred fraudulent inducement claims. The court held that where the defrauded party elects to affirm the settlement agreement and sue for damages, the choice-of-law provision shall be enforced. The court further held that, in those cases where the settlement agreements do not contain a choice-of-law provision, Florida law controls and the release language is not sufficiently broad to bar fraudulent inducement claims. *Mazzoni*, 761 So. 2d at 313, 316 n.9.

19

The Supreme Court of Florida did not discuss the litigation privilege or the reasonable reliance rule because it dealt only with the scope and effect of the releases, rather than the merits of the substantive elements of the fraud claims. As a result, *Mazzoni* has no bearing on the application of the litigation privilege.

Citing *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992), Plaintiffs also argue that because of the egregious nature of DuPont's misconduct, any litigation privilege should be qualified and should not protect DuPont from claims for fraud. In *Fridovich*, the Supreme Court of Florida held that, even though defamatory statements made in the course of judicial proceedings are absolutely privileged, defamatory statements made to the authorities *prior* to the institution of criminal charges were only entitled to a qualified immunity, which was sufficiently overcome by the egregious facts of the case. 598 So. 2d at 66, 68-69. The district court correctly distinguished *Fridovich* from the instant action because of the timing of the egregious conduct in question.[9] Because DuPont's alleged misconduct occurred *during* the Underlying Litigation and during other Benlate litigation, according to *Levin*, Florida law clearly provides an absolute immunity

_____

[9] The "primary question" facing the Supreme Court of Florida in *Fridovich* was "whether defamatory statements made to the authorities *prior* to the initiation of criminal proceedings are absolutely privileged as within the course of judicial proceedings." 598 So. 2d at 66.

20

to DuPont for their alleged misconduct.[10]  *Levin*, 639 So. 2d at 608 (emphasis added).

### C.  Reasonable Reliance

The district court found, as an alternative basis for dismissing Plaintiffs' state-law fraud claims, that Plaintiffs failed to demonstrate the necessary reliance on DuPont's misrepresentations.[11]  In *Mergens*, this court followed prior circuit precedent dealing with Florida law and articulated a bright line rule regarding reliance.  "'When negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the

---

[10]  Plaintiffs also argue that three Florida trial courts have refused to extend litigation immunity to DuPont's alleged misconduct.  *See Gilley v. Friedman, Rodriguez, Ferraro & St. Louis, P.A.*, Case No. 98-2781-CA, *Foliage Corp. of Fla., Inc. v. Friedman, Rodriquez, Ferraro & St. Louis, P.A.*, Case No. C10 00-5782, *Productura v. DuPont*, Case No. 97-12186 CA 23.  However, these cases involve factually distinguishable situations.  Also, in *Gilley,* the court issued only summary denials of the motion to dismiss and motion for summary judgment, neither of which offer guidance as to why the motions were denied.  Plaintiffs also cite *Hatcher v. Dixon*, 660 So. 2d 1105 (Fla. Dist. Ct. App. 1995), for the proposition that the litigation privilege does not extend to fraudulent inducement claims based on litigation misconduct.  However, *Hatcher* dealt with misconduct occurring during settlement negotiations rather than misconduct occurring during the course of settled litigation, and *Hatcher* merely made an assumption, which was dicta, without deciding that the "'litigation privilege' does not extend to settlement negotiations."  660 So. 2d at 1108; *see also Kobatake*, 162 F.3d at 626 & n.8 (discussing the difference between settlement negotiations and discovery).  None of these cases weaken the absolute immunity rule announced in *Levin.*

[11]  Justifiable reliance is an element of fraud under Florida law.  *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 1999); *see also Pettinelli v. Danzig*, 722 F.2d 706, 709 (11th Cir. 1984) (listing the elements of fraud under Florida law).

allegedly dishonest parties.'" *Mergens*, 166 F.3d at 1118 (quoting *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984)).

This court found that reliance was unjustified as a matter of law in *Mergens* because the plaintiffs were sophisticated "players" in the industry and were represented by counsel, the parties had been in an adversarial relationship since well before the execution of the agreement, and the existing controversy between the parties involved allegations of fraud and/or dishonesty by the defendants. 166 F.3d at 1118.

Likewise, in the instant action, Plaintiffs are individual growers and incorporated nurseries who were represented by counsel throughout the Underlying Litigation. In addition, Plaintiffs' counsel monitored other Benlate cases throughout the country and knew that DuPont had been accused of discovery abuses in other cases. The pleadings indisputably establish that the parties were in an antagonistic relationship, in which the settled litigation involved claims of actual fraud against DuPont, as well as ongoing accusations of discovery fraud and other dishonest litigation conduct. Plaintiffs allege fraudulent conduct and misrepresentations on behalf of DuPont both in this action and in the Underlying Litigation. For example, in the Underlying Litigation, Plaintiffs alleged that DuPont intentionally concealed Benlate's defects, made false statements to the

22

Environmental Protection Agency, and made false and misleading statements in public about the fitness of Benlate. In the current action, Plaintiffs allege that DuPont carried out a scheme intentionally to conceal material information regarding Benlate's defects from the court and opposing parties, including Plaintiffs. Both the past and current claims involve the same type of fraudulent conduct.

Plaintiffs argue that the fact that the conduct in this case took place during litigation renders their reliance reasonable.[12] Simply because the misrepresentations occurred during litigation does not render reliance upon them reasonable. This is especially so given the extremely adversarial positions of the parties in the Underlying Litigation and the large number of cases around the country, which the Plaintiffs were continually monitoring, in which Dupont was being accused of discovery violations involving the concealment and destruction of evidence.

Plaintiffs further argue that their reliance was reasonable because they acted with due diligence in requesting specific materials through discovery. To argue in

---

[12] Plaintiffs also assert that the allegation that they reasonably relied upon DuPont's alleged misrepresentations must be accepted as true because DuPont made motions for judgment on the pleadings. The district court correctly found that it need not accept this conclusory legal allegation as true in deciding a Rule 12 motion. *Honduras Aircraft Registry, Ltd. v. Government of Honduras*, 129 F.3d 543, 545 (11th Cir. 1997).

the abstract that litigants should be able to rely on an opponent to tell the truth in discovery responses is not enough to make reliance upon an opponent's representations reasonable in a separate fraud claim for damages. Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses. Indeed, Rule 26 of the Federal Rules of Civil Procedure imposes "an affirmative duty to engage in pretrial discovery in a responsible manner." Fed. R. Civ. P. 26(g) advisory committee's notes ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.").[13] Rule 26 explicitly encourages the imposition of sanctions for violations of the rule. However, a general entitlement to rely on a representation is not enough to make a party's reliance reasonable in support of a fraud claim. Plaintiffs have admitted that they did not trust DuPont and were making and monitoring accusations that DuPont was not telling the truth in discovery responses. *Mergens* itself involved duties to disclose arising under the federal securities laws. 166 F.3d at 1116. Although conduct, such as DuPont's alleged conduct in the Underlying Litigation,

[13]Florida Rule of Civil Procedure 1.280, the Florida counterpart to Rule 26 of the Federal Rules of Civil Procedure, does not contain a corresponding certification requirement.

may merit criminal sanctions, being held in contempt of court, bar admonitions, or even the trial court's setting aside of the judgment, the Plaintiffs chose to pursue a separate claim of fraud. To state a separate claim of fraud, they must demonstrate reasonable reliance even if the representations occurred during the litigation. Plaintiffs' repeated accusations of DuPont's cover-up regarding its product Benlate and Plaintiffs' repeated challenges to DuPont's conduct as fraudulent indicate that their reliance was not reasonable. Because Plaintiffs were represented by counsel, were in an antagonistic and distrusting relationship with DuPont, and settled litigation that included accusations of fraud and other dishonest conduct by DuPont, Plaintiffs could not reasonably or justifiably rely on any of DuPont's misrepresentations. *See id.* at 1118. Therefore, we conclude that the district court properly dismissed the Plaintiffs' fraud claims.[14]

### D. Plaintiffs' RICO Claims

---

[14] The parties submitted *Matsuura v. E.I. DuPont De Nemours & Co.*, No. 24355 (Hawaii July 29, 2003), as supplemental authority. In *Matsuura*, faced with facts similar to the present case, the Supreme Court of Hawaii held that under Hawaii law a party is not immune from liability for fraudulent conduct engaged in during prior litigation. The court further held that a plaintiff is not precluded as a matter of law from establishing reasonable reliance on representations even when the plaintiff accused the defendant of fraud and dishonesty during the course of prior dealings. Although *Matsuura* is contrary to the rules applied by the district court in the present case, we are bound by the substantive law of Florida, not the substantive law of Hawaii. In addition, the Supreme Court of Hawaii noted that its holding was contrary to the holdings of other jurisdictions on these issues, specifically citing *Levin* and *Mergens* as examples of differing rules of law.

Plaintiffs allege that DuPont carried out a scheme to defraud Plaintiffs into settling their Underlying Litigation for less money than they would have otherwise been able to obtain by withholding information and making false statements from 1991 through the filing of the present action in 1998. Plaintiffs allege that this conduct violated RICO, specifically 18 U.S.C. § 1962.

Section 1962 provides, in part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962. Plaintiffs in a civil RICO action must identify and prove a pattern of racketeering activity, which is defined as two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Plaintiffs allege that mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; obstruction of justice, in violation of 18 U.S.C. § 1503; and tampering with witnesses, in violation of 18 U.S.C. § 1512 constitute relevant predicate offenses for their civil RICO action. The district court found that Plaintiffs' mail and wire fraud claims failed because Plaintiffs were unable to

establish reasonable reliance, which is an essential element of mail and wire fraud predicates in the civil RICO context. *Florida Evergreen Foliage*, 165 F. Supp. 2d at 1351-54. The district court further found that Plaintiffs' obstruction of justice and witness intimidation claims failed because they did not satisfy the "direct injury" requirement of RICO claims. *Id.* at 1354-56.

### 1. Mail and Wire Fraud

To demonstrate a violation of the mail or wire fraud statutes,[15] Plaintiffs must show that DuPont "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by [its] misrepresentations." *Pelletier v. Zweifel*, 921 F.2d 1465, 1503 (11th Cir. 1991) (concluding that a sophisticated plaintiff's claim of reliance failed in light of undisputed facts showing that he "did not trust [the defendant's] representations and did not act as though he trusted [the defendant]"). In other words, to establish a RICO fraud claim Plaintiffs must make the same showing of reasonable reliance that is required for establishing common law fraud. *Pelletier*, 921 F.2d at 1499; *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) (stating that a plaintiff must "prove that a reasonable person would have relied on the misrepresentations").

---

[15] The substantive elements of mail and wire fraud are identical. *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998) (explaining that civil RICO fraud claims require that plaintiffs "prove that a reasonable person would have relied on the misrepresentations").

Just as Plaintiffs could not establish justifiable reliance with respect to their state-law fraud claims, they also cannot establish justifiable reliance with respect to their mail and wire fraud claims. The Supreme Court has instructed that "federal courts should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs." *Kamen v. Kemper Fi. Servs., Inc.*, 500 U.S. 90, 98, 111 S. Ct. 1711, 1717, 114 L. Ed. 2d 152 (1991) (internal quotations omitted).

We conclude that the district court correctly found that the incorporation of *Mergens'* rule that "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties" was not inconsistent or incompatible with the policies underlying the RICO statute. *Mergens*, 166 F.3d at 1118 (internal quotation omitted). Therefore, Plaintiffs' predicate mail and wire fraud claims fail.

2. Obstruction of Justice and Witness Tampering

"In addition to proving racketeering activity, a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury." *Beck*, 162 F.3d at 1095. The federal obstruction and witness intimidation claims are only

applicable to federal proceedings. *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990). The only federal case in which Plaintiffs allege any of the predicate acts took place is the *Bush Ranch* case. Plaintiffs were not parties to the *Bush Ranch* case, but allege that it was one of the cases that their attorneys were monitoring closely. "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69, 112 S. Ct. 1311, 1318, 117 L. Ed. 2d 532 (1992).

In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the "but for" cause of the injury, but the proximate cause as well. *Holmes*, 503 U.S. at 268, 112 S. Ct. at 1317-18; *Beck*, 162 F.3d at 1095-96. A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox v. Adminstrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (internal quotation omitted). Plaintiffs must show a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268, 112 S. Ct. at 1318. This court asks whether the alleged conduct was "aimed primarily" at a third party. *Bivens Gardens Office Bldg., Inc. v. Barnett*

29

*Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir. 1998) (holding that a party whose alleged injuries result from "'the misfortunes visited upon a third person by the defendant's acts lacks standing to pursue a claim under RICO") (quoting *Holmes*, 503 U.S. at 268, 112 S. Ct. at 1318); *Maiz v. Virani*, 253 F.3d 641, 657 (11th Cir. 2001) (considering whether "the RICO violations alleged in this case were ever aimed 'primarily' at the corporations").

Plaintiffs argue that they were direct targets of DuPont's racketeering and that they suffered direct injury in that DuPont knew that Plaintiffs were monitoring the *Bush Ranch* case and that DuPont hid and falsified evidence in that case to defeat cases throughout the country. This is too remote to satisfy the proximate cause requirements because the directness inquiry is not a question of specific intent. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537, 103 S. Ct. 897, 908, 74 L. Ed. 2d 723 (1983); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 242 (2d Cir. 1999) (noting that "an allegation of specific intent does not overcome the requirement that there must be a direct injury to maintain this action;" the contrary view was "specifically rejected" by the Supreme Court); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 929 (9th Cir. 1994) ("Pillsbury's contention that its allegations of defendants' specific intent to cause harm to it

30

somehow preserves its standing in this case is incorrect. The existence of specific intent does not answer the question of whether the injury is specifically direct."). "[T]he test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Bivens*, 140 F.3d at 908. The Plaintiffs cannot establish that DuPont's obstruction of justice and witness tampering in the *Bush Ranch* case were the proximate cause of their alleged injury. Therefore, Plaintiffs' obstruction of justice and witness tampering predicate claims fail.

Because Plaintiffs cannot demonstrate justifiable reliance on DuPont's acts of mail and wire fraud or proximate cause between the alleged acts of obstruction of justice and witness tampering and their injuries, they cannot establish any valid predicate acts. Absent any valid predicate acts, the Plaintiffs have failed to state a valid claim for RICO violations.

*E. Spoliation*

The elements of a spoliation claim are

(1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages.

31

*Continental Ins. Co. v. Herman*, 576 So. 2d 313, 315 (Fla. Dist. Ct. App. 1990); *see Hagopian v. Publix Supermarkets, Inc.*, 788 So. 2d 1088, 1091 (Fla. Dist. Ct. App. 2001).  Plaintiffs must "demonstrate that [they] were unable to prove [their] underlying action owing to the unavailability of the evidence."  *Herman*, 576 So. 2d at 315.

Plaintiffs' spoliation claim rests more on concealment than actual destruction.  Plaintiffs argue that concealment of evidence may constitute spoliation; however, no Florida case has ever held that concealment of evidence constitutes spoliation.  To the contrary, spoliation is defined as the "destruction" of evidence or the "'significant and meaningful alteration of a document or instrument.'"  *Aldrich v. Roche Biomedical Labs, Inc.*, 737 So. 2d 1124, 1125 (Fla. Dist. Ct. App. 1999)(quoting Black's Law Dictionary 1401 (6th ed. 1990)).  Concealment does not constitute spoliation because such conduct is covered by the litigation privilege.  *See Jost v. Lakeland Regional Med. Ctr.,* 844 So. 2d 656, 658 (Fla. Dist. Ct. App. 2003) ("Concealment of evidence, however, does not form a basis for a claim of spoliation."); *see, e.g., Regal Marble, Inc. v. Drexel Investments, Inc.*, 568 So. 2d 1281, 1282 (Fla. Dist. Ct. App. 1990) (finding no cause of action for the deliberate introduction of alleged false exhibits into evidence in a prior case); *Perl v. Omni Int'l of Miami, Ltd.*, 439 So. 2d 316, 317

(Fla. Dist. Ct. App. 1983) (finding that litigation immunity barred a damages claim for "fraud, perjury, and forgery" based on "alleged false testimony and alleged false documentary evidence").[16]

Plaintiffs assert that their spoliation claim encompasses DuPont's destruction of test plants involved in a field trial conducted in Costa Rica and the concealment of the analytical testing. However, Plaintiffs do not assert that DuPont destroyed evidence essential to the Plaintiffs' case, such as Plaintiffs' own plants or the allegedly defective Benlate that Plaintiffs claim to have applied to their plants. Plaintiffs merely argue that "[w]ithout the withheld altered, and destroyed evidence, Appellants could not effectively rebut DuPont's 'better science' evidence." [Appellants' Br. at 36-37].

Plaintiffs' inability to rebut a defense theory is not "significant impairment" of the Plaintiffs' ability to prove its case. Plaintiffs cannot show that the actual destruction of the test plants in Costa Rica led to their inability to prove their

_____

[16] In *Jost*, a medical malpractice plaintiff amended her complaint to add counts for spoliation, claiming that the defendants "concealed or destroyed evidence" relevant to the malpractice claim. The court affirmed the dismissal of the spoliation claims because concealment does not form a basis for a claim for spoliation. The court also held that a plaintiff cannot bring an independent spoliation claim where the alleged spoliator and the defendant in the underlying action are "one and the same" because remedies exist in the context of the underlying suit. 844 So. 2d at 657-58. *See also Martino v. Wal-Mart Stores, Inc.*, 835 So. 2d 1251, 1256 (Fla. Dist. Ct. App. 2003) (holding that "an independent cause of action for spoliation of evidence is unnecessary and will not lie where the alleged spoliator and the defendant in the underlying litigation are one and the same").

lawsuit.  Therefore, the district court properly dismissed Plaintiffs' spoliation claim.

*F.  Leave to Amend*

Two days prior to the scheduled oral argument on DuPont's motions for judgment on the pleadings on Plaintiffs' RICO and spoliation claims, Plaintiffs filed a motion for leave to amend their complaint.  The proposed amendments seek to revise the factual allegations of the amended complaint, delete certain claims upon which the district court had already ruled and which were before this court for review, and add new Florida RICO claims.  The proposed amended complaint directly affected the issues already pending before this court on interlocutory appeal.

"The filing of a notice of appeal is an event of jurisdictional significance - - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982); *see Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case.  A district court does not have the power to alter the status of the case

34

as it rests before the Court of Appeals.") (citations and internal quotation marks omitted). Because the proposed amendment would have altered the status of the case, the district court properly found that it was without jurisdiction to grant Plaintiffs' leave to file an amended complaint.[17]

However, an interlocutory appeal does not completely divest the district court of jurisdiction. "The district court has authority to proceed forward with portions of the case not related to the claims on appeal . . . ." *May v. Sheahan*, 226 F.3d 876, 880 n.2 (7th Cir. 2000). Therefore, the district court did possess jurisdiction to rule upon DuPont's Rule 12(c) motion directed at Plaintiffs' RICO and spoliation claims.

## CONCLUSION

While we do not sanction DuPont's alleged conduct and note that other penalties exist for such dishonest actions, for the reasons outlined in this opinion, we conclude that the district court properly entered judgment on the pleadings and did not abuse its discretion in denying Plaintiffs' motion for leave to amend their complaint when the amendment would have affected the issues already before this

---

[17] Additionally, Plaintiffs' proposed Florida RICO claims were futile, for the same reasons supporting the dismissal of Plaintiffs' federal RICO claims. *See O'Malley v. St. Thomas Univ., Inc.*, 599 So. 2d 999, 1000 (Fla. Dist. Ct. App. 1992) (relying on federal RICO caselaw in affirming the dismissal of Florida civil RICO claims on the ground that "indirect injury" is not sufficient to confer standing under Florida RICO).

court on interlocutory appeal.  Accordingly, we affirm the Rule 12(c) judgment on the pleadings.

AFFIRMED.