[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13254
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:11-cv-00117-TCB


COMPUCREDIT HOLDINGS CORPORATION,

Plaintiff - Appellant,

versus

AKANTHOS CAPITAL MANAGEMENT, LLC,
ARIA OPPORTUNITY FUND LTD.,
AQR ABSOLUTE RETURN MASTER ACCOUNT, L.P.,
CC ARBITRAGE, LTD.,
CNH CA MASTER ACCOUNT, L.P., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 10, 2011)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant CompuCredit Holdings Corporation ("CompuCredit") brought suit alleging antitrust violations against a number of hedge funds (Defendants-Appellees) that hold convertible senior notes issued by CompuCredit. CompuCredit claimed that Defendants acted collectively to force CompuCredit to pay above-market prices to redeem its notes early, thus violating the Sherman Act.[1] The district court granted Defendants' motion for judgment on the pleadings; CompuCredit now appeals.

## I. BACKGROUND[2]

CompuCredit is a provider of credit and related financial services products. Defendants are holders of long-term convertible promissory notes issued by CompuCredit in 2005 in two series. The first series is due and payable in 2025; the second series is due and payable in 2035. These notes were originally issued in a private placement, but are now traded on the secondary market. As of December 2009, the twenty-one hedge fund Defendants collectively owned 70% of the notes issued in 2005.

---

[1] 15 U.S.C. § 1.

[2] We recite the facts in the light most favorable to the nonmoving party. *See Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).

In December 2009, CompuCredit announced that it was planning to issue a dividend of $25 million to stockholders and was considering spinning off its profitable microloan business. In response, Defendants filed suit under the Uniform Fraudulent Transfer Acts ("UFTA"), alleging that CompuCredit was insolvent on a pro forma basis and requesting that the court enjoin the payment of the dividend and the spinoff to ensure that CompuCredit could pay back its debt obligations. At the time of the suit, CompuCredit had never missed an interest payment on the notes.

The court found that CompuCredit was not insolvent and denied the injunctions. CompuCredit then offered to repurchase up to $160 million of its notes outstanding at a price purportedly at or above market value. None of the Defendants participated in the tender offer, and CompuCredit alleges that they conspired in their refusal of the offer. CompuCredit was able to repurchase about 11% of the outstanding 2025 notes at roughly 50% of face value and about 10% of its outstanding 2035 notes at approximately 35% of face value.

The Defendants continued to allege CompuCredit's insolvency. In January 2010, they wrote a letter to CompuCredit's auditor, expressing doubt about CompuCredit's financial health. In February 2010, they wrote the Securities and Exchange Commission, alleging that CompuCredit was insolvent. In March 2010,

3

Defendants contacted the indenture trustee, claiming that CompuCredit had violated the terms of the indentures. Finally, on March 8, 2010, Defendants made a collective demand that CompuCredit repurchase their notes at par value. CompuCredit estimates that the 2025 notes were trading at 53.5 percent of par and the 2035 notes were trading at 37 percent of par at the time of this demand.[3]

CompuCredit refused Defendants' request to repurchase the notes at par and brought this suit. CompuCredit alleges that Defendants conspired to boycott its tender offer in order to inflate the redemption price of their notes and thereby violated the Sherman Act. Defendants moved for a judgment on the pleadings, and the district court granted their motion on June 17, 2011. This appeal followed.

## II. DISCUSSION

We review *de novo* a ruling on a motion for judgment on the pleadings. *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). For the sake of our review, we will accept all well-pled factual allegations in the complaint as true. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). However, we are not obligated to accept alleged legal conclusions as true. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1304 n.12 (11th Cir. 2003). "If

---

[3]Defendants argue that this demand was required under the litigation procedures of the UFTA.

4

upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley*, 292 F.3d at 700.

Construing the facts most favorably to CompuCredit, we find that the behavior of Defendants alleged by CompuCredit does not constitute a violation of the Sherman Act. The cases that CompuCredit offers in support of its position are factually distinguishable from and thus irrelevant to the current dispute, and we find no other case law that would support the proposition that the actions alleged are illegal under the Sherman Act. Therefore, we affirm the district court.

CompuCredit first argues that the controlling case for this dispute is *FTC v. Superior Court Trial Lawyers Ass'n*, in which the Supreme Court held that it was a violation of the Sherman Act for trial lawyers to boycott taking on court-appointed criminal cases in order to gain leverage in pay negotiations with the District of Columbia Superior Court. 493 U.S. 411, 428, 110 S. Ct. 768, 869 (1990). Despite CompuCredit's characterization of Defendants as "horizontal competitors" engaged in a "boycott" of CompuCredit's tender offer, we disagree with CompuCredit's assertion that *Superior Court Trial Lawyers Ass'n* is an appropriate parallel. Defendants here are holders of CompuCredit's promissory notes. This relationship arose when CompuCredit willingly took on an obligation

5

to repay the notes via a free-market transaction. Although these promissory notes are traded on a secondary market, they retain their essential character as debt instruments. The pre-existing debtor and creditor relationship differentiates this case from *Superior Court Trial Lawyers Ass'n*. CompuCredit was not in the same position as a normal buyer of goods or services; instead it wished to pay back the money it already owed (at a price below par value but at or above market value). Defendants' choice to reject this offer and seek full par value is not the same as a boycott intended to raise future sales prices.

CompuCredit also relies heavily on *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 100 S. Ct. 1925 (1980) (per curiam). Although *Catalano* actually involved debtors, the alleged antitrust violations concerned the terms of future transactions, not a pre-existing debt. *Id.* at 644–45, 100 S. Ct. at 1926. The Supreme Court held that an agreement among beer wholesalers to begin denying short-term credit to retailers was "merely one form of price fixing" and thus illegal. *Id.* at 650, 100 S. Ct. at 1929. Here, the par value of the debt was already fixed by agreement of the parties. Negotiations about the repayment of a debt are factually dissimilar from a unilateral conspiracy to fix future prices in a market.

Furthermore, other circuits have held that it is not a violation of the Sherman Act for debtors to act collaboratively to collect pre-existing debts. In

6

*United Airlines v. U.S. Bank, N.A.*, the Seventh Circuit held that collective action of a group of creditors to recover the full amount of debts arising from "competitively determined contracts" was not in violation of the antitrust laws. 406 F.3d 918, 921 (7th Cir. 2005). Similarly, in *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, the Second Circuit firmly rejected the appellant's claim that joint activity by its creditors to collect the debts owed by appellant violated antitrust law. 691 F.2d 1039, 1052–53 (2d Cir. 1982).

## III. CONCLUSION

We do not find that the facts alleged constitute a violation of the Sherman Act. The order of the district court granting Defendants' motion for judgment on the pleadings is affirmed.

**AFFIRMED.**